UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARIN KRAMER and ON POINT
ACUPUNCTURE & WELLNESS INC.; 185
DEVONSHIRE ST. STE 201 LLC,

                                Plaintiffs,

       v.

NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD,

                                Defendant.

No. 18-CV-4848 (KMK)

OPINION & ORDER

Appearances

Karin Kramer
Peoria, IL
*Pro Se Plaintiff*

Seth G. Park, Esq.
CNA Coverage Litigation Group
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

      Pro se Plaintiffs On Point Acupuncture & Wellness, Inc. ("On Point"), 185 Devonshire

St. Ste. 201 LLC ("185 Devonshire St."), and Karin Kramer ("Kramer") (collectively

"Plaintiffs"), bring this Action against Defendant National Fire Insurance Company of Hartford

("Defendant" or "NFICH"), alleging improper denial of insurance coverage.  (Compl. (Dkt. No.

1).)[1,2] Before the Court is Defendant's Motion To Dismiss, pursuant to Rule 12(b)(1) of the

Federal Rules of Civil Procedure for lack of subject-matter jurisdiction, and alternatively

pursuant to Rule 12(b)(6) for failure to state a claim. (Not. of Mot. (Dkt. No. 14).) For the

reasons stated below, Defendant's Motion is granted.

---

[1] The Complaint lists 185 Devonshire St. as a Plaintiff in this Action. The Complaint describes 185 Devonshire St. as an entity registered in Massachusetts, (Compl. 6), but also as a property the loans for which were at some point in default, (*id*. at 7). Kramer does not specify what kind of entity 185 Devonshire St. is. Inasmuch as Plaintiffs seek to name 185 Devonshire St. the property as a Plaintiff, they need to amend their Complaint to clarify who the real party in interest is. Pursuant to Rule 17(a)(1) of the Federal Rules of Civil Procedure, "an [a]ction must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). To be a real party in interest under Federal Rule 17(a), the "action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) (citation omitted). With respect to property interests, it is usually the owner or possessor of a property who is the real party in interest. *Cf. Chicago , R.I. & P.R. Co. v. Strude*, 346 U.S. 574, 579–80 (1954) (holding that on remand appeal should be docketed under name of owner of the property and others with interest in the property in dispute). Here, the Complaint does not clearly state whether Kramer or On Point is the owner of 185 Devonshire St., and the Complaint does not clearly allege what interest in the property Plaintiffs are asserting. If Plaintiffs choose to amend their Complaint, they may clarify who the Parties with interests in 185 Devonshire St. are and exactly what interests in the property they are asserting. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (holding that, even though a district court retains discretion despite Rule 17(a)(3) to dismiss an action for failure to commence in the name of the real party in interest, "substitution . . . should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants"). Defendant notably does not mention 185 Devonshire St. in its submissions, and the Parties' submissions do not show any connection between Defendant and 185 Devonshire St. other than Plaintiffs' allegations regarding Plaintiffs defaulting on loans, further discussed below.

[2] Plaintiffs base this Court's jurisdiction on diversity of citizenship and federal question grounds. (Compl. 2.) Plaintiffs also lists numerous federal statutes, most of them criminal statutes with no private right of action, and it is not clear which statutes Plaintiffs rely on to state their claims.

I.  Background

A.  Factual Background

The facts recounted below are taken from Plaintiffs' Complaint and the documents

attached thereto, as well as a letter submitted by Plaintiff in Opposition to Defendant's request to

file a Motion, (Letter from Karin Kramer to Court ("Pls.' Letter") (Dkt. No. 11)), and are

assumed to be true for purposes of resolving the Motion.[3]

Plaintiffs allege that On Point and 185 Devonshire St. are entities registered in the state of

Massachusetts, and that Kramer is the owner of the property and the business, and an officer and

manager of On Point.  (Compl. 6.)  On Point is a corporation organized under the General Laws

of the Commonwealth of Massachusetts.  (Affidavit of Seth G. Park, Esq. ("Park Aff.") Ex. 18

(On Point Corporate Annual Report) (Dkt. No. 16)).[4]

Plaintiffs allege that both the business and the property are insured.  (Compl. 6.)  On

Point maintained a "CNA Connect" insurance policy with Defendant for the policy period June

25, 2015 to June 25, 2016, under policy number 6011547042 ("the Policy").  (Park Aff. Ex. 1

(Defendant Policy Number 6011547042 ("the Policy")).)  The Policy provided Business Owners

Special Property insurance coverage as well as Business Owners (Commercial) General Liability

---

[3] Kramer is the only individual who entered an appearance on behalf of Plaintiffs.  With respect to allegations the Complaint states regarding events that occurred to Kramer, the Court will treat those as Kramer's allegations only.  With respect to allegation the Complaint states regarding events that also involve On Point or 185 Devonshire St., the Court will treat those allegations as Plaintiffs' allegations collectively.

[4]  The Court may consider matters outside the Complaint submitted by Defendant to challenge the Court's subject matter jurisdiction.  "In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings."  *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

insurance coverage.  On Point is the only named insured on the Policy and, as stated on the

Policy's Declarations Page, "[t]he Named Insured is a Corporation."  (*Id.*)

This Action arises out of several claims for insurance coverage submitted to Defendant.

Plaintiffs allege that Defendant has breached its "duty to defend" and "duty to indemnify,"

deprived Plaintiffs of "access to [] liability insurance coverage," and failed to provide "a legally

sufficient explanation" for denying coverage.  (Compl. 5.)[5]

The first claim was for bodily injuries and property damage resulting from "an assault

and battery, theft and vandalism of the company auto," that Kramer suffered on September 26,

2015.  (*Id.* at 6.)  Kramer alleges she suffered bodily injury and the theft of her laptop along with

valuable records, "such as lease etc." and "financial documents," that were stolen with her bag.

(*Id.* at 6–7.)  According to Kramer's "Work Injury Statement," Kramer went to a 7-Eleven in

Brookline, Massachusetts, to mail work letters and bills, and to get quarters and stamps.  (Compl

Ex. U at 125 (Work Injury Statement) (Dkt. No. 1-1).)[6]  She alleges that there was a verbal

altercation with three men inside the 7-Eleven, that they followed her out to her car, and that they

attacked her.  (*Id.*)  Notably, in the Police Report that Kramer submits, the Boston Police Officer

who arrived on the scene stated that he "spoke to the woman, later identified as Karin C. Kramer

---

[5]  Large portions of any relevant policy are seemingly not included with Plaintiffs' Complaint.  Plaintiffs cite to portions of the policy throughout the Complaint and attach some portions as exhibits.  (*See* Compl.)  Plaintiffs also only submit partial records for each of the claims they allege Defendant improperly denied.  (*See id.*)  Plaintiffs' Complaint is a compilation of indecipherable statements, excerpts of unspecified insurance policies, and citations to non-binding and inapposite caselaw.

[6]  Plaintiffs' filings do not have consistent pagination.  To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.  Plaintiffs submit two attachments, (Dkt. Nos. 1-1 and 1-2), consisting of various exhibits.  The Court will indicate on what page number within Dkt. Nos. 1-1 or 1-2 an exhibit is included.  Where the Court cites to a specific page number within an exhibit, the page number is the ECF page number of the attachment at Dkt. Nos. 1-1 or 1-2.

who was sitting on the sidewalk in a puddle of blood with blood all over her face. . . . She appeared to be intoxicated and [had] a strong odor of alcoholic beverage.  She stated that she just left a bar, but she did not remember what bar she visited . . . . She stated that she was on her way to her car, but she did not remember what happened after that."  (Compl. Ex. V at 6 (Police Report) (Dkt. No. 1-2).)  Other witnesses on the scene stated that they saw Kramer chasing a group of two or three men, and at least one of the men physically assaulting Kramer.  (*Id.*)  Kramer alleges she filed this claim as an "insured employee and insured manager," for harms she suffered "in the course of employment," and that the claim was denied because she, as the owner and manager of On Point, was not covered under Defendant's policy.  (Compl. 7, 17.)

Plaintiffs allege that they defaulted on loans taken out on the 185 Devonshire St. property as a result of Defendant's refusal to provide coverage for the September 26, 2015 incident.  (*Id.* at 7.)  Kramer alleges that on August 15, 2017, she alerted Defendant's claims handler "of the default status of the property insured [at] 185 Devonshire St."  (*Id*. at 6.)  Kramer further alleges that she submitted default judgments and demand letters for payments due on 185 Devonshire St. to Defendant when she filed the claim.  (*See id*. at 7, Exs. A, B (Dkt. No. 1-1).).  Kramer submits incomplete portions of an insurance policy at Exhibits E through K to the Complaint in support of these assertions.  (*See* Compl. Exs. E–K (Dkt. No. 1-1).)  She also cites several California and Ninth Circuit cases in which insurers were found to have breached their duty to defend a case where an insured party subsequently defaulted on loans.  (Compl. 8.)

Separately, Kramer alleges that as a result of the September 26, 2015 incident, she became the victim of identity theft.  (*Id*. at 14.)  She submits police incident reports, as well as IRS forms and bank statements that allegedly show her identity was stolen.  (Compl Ex. U at 90–125 (Dkt. No. 1-1).)  Kramer alleges that there was an "IRS flag" that a filing in her name was

made in a foreign country.  (Compl. 14.)  Plaintiffs allege that under Defendant's "Identity

Recovery Coverage," Defendant had an obligation to allow Kramer to select her own attorney

and to investigate the identity theft, but failed to do so.  (*Id*. at 14.)

Kramer also alleges that the Policy was "ambiguous," and that the factual contentions in

her claim placed the claim within the Policy's coverage.  (*Id*. at 14, 17.)  Kramer alleges that

Defendant failed to investigate her bodily injury and identity theft claims and wrongly denied her

coverage.  (*Id*. at 17.)  Kramer alleges that Defendant agreed to pay for the stolen laptop, but not

for medical bills related to the bodily injuries she sustained, and that the incident exacerbated

prior musculoskeletal injuries she had.  (*Id*.)[7]

The second claim related to a lawsuit Ashley Ledford ("Ledford"), a former On Point

employee, brought against On Point for "fiduciary practices, negligent hiring and patient safety

violations."  (*Id*. at 8–9.)  Plaintiffs submit a letter dated February 5, 2016, from counsel for

Ledford, stating that Ledford was bringing suit against Kramer and On Point for, among other

things, fraud and retaliatory wrongful termination.  (Compl. Ex. L (Dkt. No. 1-1).)  Ledford was

an acupuncturist and massage therapist at On Point, and she alleged that she was fired in

retaliation for filing a Worker's Compensation claim and for raising issues about patient safety.

(*Id*.)  Plaintiffs excerpt portions of an "Employment Practices Liability Coverage Form," and a

section of that form titled "Extended Reporting Period."  (Compl. at 9–10, Ex. M1 (Dkt. No. 1-

1).)  Plaintiffs allege that Defendant denied the claim related to Ledford because "there [was] no

---

[7] Kramer also alleges that she miscarried a baby one week after the assault, that there has
been no investigation into the incident, and that she has not had any further communications
from the prosecuting attorneys in Boston or from the Federal Bureau of Investigation.  (Compl.
18.)  Kramer cites to federal and state criminal statutes prohibiting hate crimes and violence
against unborn victims.  (*Id*. at 18–19.)  Even liberally construing the Complaint, the Court does
not understand Kramer to be bringing claims based on her miscarriage, or based on criminal
statutes with no private rights of action, against Defendant.

coverage because the claim was reported out of the extended reporting time period." (Compl. at 10, Ex. Q at 34 (Ledford Denial Letter) (Dkt. No. 1-1).) The Denial Letter states that the "claim was not reported to the Company until 06/23/2017, in excess of 11 months after the Policy expired and was non-renewed. As this claim was not reported as soon as practicable, but in no event later than 90 days after the end of the policy period, there is no coverage for this matter and neither indemnity nor defense will be provided." (Ledford Denial Letter.) Kramer further alleges that Defendant "canceled the coverage," that "[t]here was no option to add coverage for an extended reporting coverage by the insured," that the claim was actually "made in the coverage contract time period," and that "an insurer has a duty to defend all claims whether reported out o[f] the time period." (Compl. 10.)

The third claim related to a lawsuit involving Crystal Meyers ("Meyers"), a former On Point employee. (Compl. 11–14.) By letter dated February 5, 2016, Meyers responded to a "cease and desist" demand from On Point by asserting a counter-claim against Kramer and On Point for "unfair and deceptive trade practices, . . . tortious interference with advantageous relationships, fraud, invasion of privacy, appropriation of name, breach of fiduciary duty, intentional infliction of emotional distress, defamation, identity theft, and other claims." (Compl. Ex. R at 50 ("Meyers Letter") (Dkt. No. 1-1).) Plaintiffs assert that Defendant should have covered Plaintiffs' defense in the Meyers action under the "Business Liability Coverage [R]elated to Personal and Advertising Injury" and "Fiduciary Liability" portions of the policy. (Compl. 11–13.) On July 6, 2017, Defendant denied Plaintiffs' coverage because the claim was not reported while the coverage was still in effect, and therefore the policy had terminated so that no coverage was available, and because various policy exclusions barred coverage for the claim. (Compl. Ex. T at 79 (Meyers July Denial Letter (Dkt. No. 1-1).) Additionally, on October 12,

2017, Defendant denied Kramer's claim because the policy did not cover the types of allegations raised by Meyers.  (Compl. Ex. T at 84 (Meyers October Denial Letter) (Dkt. No. 1-1).)

### B.  Procedural Background

On June 1, 2018, Plaintiffs filed the Complaint.  (Compl.)[8]  On July 5, 2018, counsel for Defendant submitted a pre-motion letter to the Court requesting permission to file a Motion To Dismiss.  (Letter from Seth G. Park, Esq., to Court (Dkt. No. 7).)  On July 17, 2018, the Court instructed Defendant to provide more detail as to the proposed Motion.  (Dkt. No. 9.)  On July 24, 2018, counsel for Defendant submitted another pre-motion letter.  (Letter from Seth G. Park, Esq., to Court (Dkt. No. 10).)  On July 27, 2018, Plaintiffs submitted a letter opposing Defendant's request.  (Pls.' Letter.)

On August 6, 2018, the Court granted Defendant's request and adopted a briefing schedule.  (Dkt. No. 12.)  On September 13, 2018, Defendant filed its Motion To Dismiss and accompanying papers.  (Not. of Mot.; Def.'s Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Mem.") (Dkt. Nos. 14, 15); Park Aff.)  Plaintiff did not file a response.  On January 24, 2019, the Court deemed the Motion fully submitted.  (Dkt. No. 18.)

### II.  Analysis

### A.  Standard of Review

"The standards of review under Rules 12(b)(1) and 12(b)(6) . . . are substantively identical."  *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)), *aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court

---

[8] On June 1, 2018, Kramer also prematurely and without the Court's leave filed a motion for summary judgment.  (Dkt. No. 3–4.)  That motion was terminated for failure to follow the Local Rules.  (Dkt. (entry for June 1, 2018).)

must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at \*2 (D. Conn. June 3, 2014) (citation and quotation marks omitted). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Lerner*, 318 F.3d at 128); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (citation and quotation marks omitted)). This allocation of the burden of proof is the "only substantive difference" between the standards of review under these two rules. *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009).

   1. <u>Rule 12(b)(1)</u>

  "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)

(describing subject matter jurisdiction as the "threshold question" (quotation marks omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998))). "In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings." *JTE Enters., Inc.*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the

10

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court

may consider "materials outside the complaint to the extent that they are consistent with the

allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4

n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that the plaintiff[]

either possessed or knew about and upon which [the plaintiff] relied in bringing the suit,"

*Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

### B. On Point as Improper Pro Se Litigant

Defendant argues that On Point is a corporation and therefore may not proceed without

the representation of counsel and that its claims in this Action must accordingly be dismissed.

(Def.'s Mem. 10–11.) Defendant correctly points out that 28 U.S.C. §1654, "providing that

'parties may plead and conduct their own cases personally or by counsel,' does not allow

corporations, partnerships, or associations to appear in federal court otherwise than through a

licensed attorney." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506

U.S. 194, 202 (1992) (holding that "[i]t has been the law for the better part of two centuries

. . . that a corporation may appear in federal courts only through licensed counsel"). "[A]

layperson may not represent a corporation in which [s]he is the sole shareholder, a limited

liability company of which [s]he is the sole member, or a partnership where [s]he is a partner."

*See Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 133 (2d Cir. 2009) (citations omitted); *Grace v.*

*Bank Leumi Trust Co. of N.Y.,* 443 F.3d 180, 192 (2d Cir. 2006) (holding that "[i]t is settled law

that a corporation may not appear in a lawsuit against it except through an attorney") (citation

omitted); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) ("The rule that

a corporation may litigate only through a duly licensed attorney is venerable and widespread.");

*cf. Sanchez v. Walentin*, 526 F. App'x 49, 51 (2d Cir. 2013) (holding that a pro se plaintiff could

not pursue claims that belonged to a corporation even where the corporation assigned its claims

to him because the rights were the corporation's).

Here, Kramer alleges that On Point and 185 Devonshire St. are entities registered in the

State of Massachusetts, and that she is the owner of the property and the business, and an officer

and manager of On Point. (Compl. 6.) Additionally, Defendant submits evidence that On Point

is a corporation organized under the General Laws of the Commonwealth of Massachusetts. (On

Point Corporate Annual Report.) Plaintiffs do not clarify what kind of entity 185 Devonshire St.

is. Kramer has neither responded to Defendant's Motion nor corresponded with the Court about

whether On Point or 185 Devonshire St. intend to retain counsel. Unless and until On Point and

185 Devonshire St. retain counsel, they may not proceed in this case and all claims asserted by

them and on their behalf must be dismissed. *See Argento v. Santiago*, No. 16-CV-6172, 2019

WL 948186, at \*2 (W.D.N.Y. Feb. 27, 2019) (holding that a corporation could not proceed in a

case by representing itself through a layperson representative of the corporation proceeding pro

se); *Holzer v. Barnard*, No. 15-CV-6277, 2016 WL 4046767, at \*5 (E.D.N.Y. July 27, 2016)

(holding that a corporation could not proceed in a case by representing itself through its owner,

who wholly owned the corporation, proceeding pro se). Accordingly, all claims asserted by On

Point and 185 Devonshire St. or on their behalf are dismissed.

### C.  Kramer's Standing

Defendant argues that Kramer lacks standing to bring this Action. (Def.'s Mem. 11–13.)

Defendant correctly points out that although Kramer may be the owner and director of On Point,

she cannot serve as the corporation's alter ego for purposes of litigating insurance coverage.

(*Id.*)  "As a general rule, a corporation exists independently of its owners as a separate legal

entity . . . ." *In re Adler*, 467 B.R. 279, 286 (Bankr. E.D.N.Y. 2012) (citing *Anderson v. Abbott*,

321 U.S. 349, 361–63 (1944)), *aff'd* 518 B.R. 228 (2d Cir. 2014); *see also Spaneas v. Travelers Indem. Co.*, 668 N.E.2d 325, 326 (Mass. 1996) ("A corporation is an independent legal entity, separate and distinct from its shareholders, officers, and employees." (citations omitted)); *Port Chester Elec. Const. Co. v. Atlas¸* 357 N.E.2d 983, 986 (N.Y. 1976) ("Corporations . . . are legal entities distinct from their managers and shareholders and have an independent legal existence." (citations omitted)).  On Point is the only named insured party in the Policy.  Kramer is not listed as an insured party.  (*See generally* Policy)  Kramer does not allege that On Point assigned the right to sue based on the Policy to Kramer.  *Cf. Lambrinos v. Exxon Mobil Corp.*, 349 F. App'x 613, 614 (2d Cir. 2009) (holding that corporation's assignment of a claim to a property owner was sufficient to render the property owner the real party in interest); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (holding that "substitution . . . should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants").  Thus, Kramer cannot serve a stand-in for On Point in litigating its claims against Defendant.  *See Kalb, Voorhis & Co., v. Am. Fin. Corp.,* 8 F.3d 130, 134–35 (2d Cir. 1993) (affirming dismissal of shareholder's claim for lack of standing where claims belonged to the corporation); *Nordberg v. Lord, Day & Lord*, 107 F.R.D. 692, 697 (S.D.N.Y. 1985) (holding that shareholders' action against, among others, the corporation and insurance companies should have been brought as a derivative action where plaintiffs alleged injury to the corporation and not the shareholders directly).[9]

Kramer also lacks standing to bring a direct claim against Defendant.  It is well-settled that shareholders lack standing to assert individual claims based on injury to the corporation.  *See*

---

[9] It is not clear that Kramer seeks or would have reason to seek to bring a derivative action on behalf of On Point given that she is the owner and sole shareholder and presumably does not face board opposition to On Point bringing a suit on its own behalf.  But even if Kramer

14

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) (citing *Rand v. Anaconda–*

*Ericsson, Inc.*, 794 F.2d 843 (2d Cir.), *cert. denied*, 479 U.S. 987 (1986)). A shareholder may,

however, bring a direct suit to redress injury that is separate and distinct from injury sustained by

the corporation, such as that resulting from breach of an independent duty owed to the

shareholder. *See Ceribelli v. Elghanayan*, 990 F.2d 62, 63–64 (2d Cir. 1993) (citations omitted);

*Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975) (holding that an exception to

the rule that shareholders may not sue for harm inflicted upon the corporation is exists where

there is "a special relationship between the suing shareholder and the defendant creating a special

duty, contractual or otherwise, other than that owed to the corporation"); *In re Granite Partners,*

*L.P.*, 194 B.R. 318, 325–26 (Bankr. S.D.N.Y. 1996) (holding that a shareholder may seek direct

relief against a defendant "where the allegedly wrongful conduct violates a separate duty to the

complaining shareholder independent of the fiduciary duties that the wrongdoer owes to all of

the shareholders, or where the conduct causes an injury to the plaintiff distinct from any injury to

the corporation") (citation omitted). The injuries alleged, specifically the denial of insurance

---

was seeking to bring a derivative suit, the Complaint does not comply with the verification and
pleading requirements of Rule 23.1 of the Federal Rules of Civil Procedure, and Kramer does not
allege facts that would allow the Court to read a derivative action into the Complaint. *See* Fed.
R. Civ. P. 23.1; *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376,
395 (S.D.N.Y. 2013) (stating that Rule 23.1 outlines the substantive and procedural aspects of
derivative action requirement). For example, Kramer neither states that the right she is asserting
is On Point's, nor that there is a reason that On Point itself cannot bring the action.
    There is also no allegation in the Complaint that the Court can plausibly interpret to
suggest that Kramer wishes to bring a direct claim against On Point in this Action. At most,
Kramer seeks to assert rights that belong to On Point, or Kramer brings claims directly against
Defendant for denial of coverage to herself. In any event, Kramer will have an opportunity to
remedy her failure to verify the Complaint as a derivative Action and to plead facts to state a
derivative claim if she chooses to amend, or to obtain counsel for On Point and to have On Point
litigate its own claims. The Court notes that like corporations, plaintiffs in a derivative
complaint must be represented by counsel. *See Phillips v. Tobin*, 548 F.2d 408, 411–12 (2d Cir.
1976) (noting that because corporations may only appear through an attorney, plaintiffs in a
derivative action likewise must be represented by counsel).

coverage for various claims, are the same as to On Point and Kramer. Kramer thus does not

allege that Defendant caused an injury against her that is separate from the injury Defendant

allegedly caused against On Point by denying coverage. Kramer also does not allege that she has

a "special relationship" with Defendant or that she was owed a duty by Defendant separate from

the duty Defendant owed to On Point to provide insurance coverage. Kramer alleges she brought

her claims as an "insured employee" of On Point. (Compl. 7, 17.) Accordingly, Kramer does

not have standing to directly seek relief against Defendant. *See Barry v. Curtin*, 993 F. Supp. 2d

347, 352–53 (E.D.N.Y. 2014) (dismissing a case for lack of subject matter jurisdiction where the

plaintiff shareholder did not have standing to bring a direct action against the defendant because

he did not suffer any injury separate from the corporation).[10]

---

[10] The Court does not read Plaintiffs' Complaint as alleging that On Point injured Kramer
and that Kramer seeks to sue On Point in this action. However, Defendant correctly argues that
to the extent Kramer is attempting to bring this Action against Defendant as On Point's insurer
based on wrongful acts committed against Kramer by On Point, Kramer has no direct right of
action against Defendant. (Def.'s Mem. 12–13.) Under both New York and Massachusetts law,
a plaintiff can only bring an action against an insurer after plaintiff has obtained a judgment
against the insured defendant in an underlying action. *See Lang v. Hanover Ins. Co.*, 820 N.E.2d
855, 858 (N.Y. 2004) (holding that New York Insurance Law § 3420 allows an injured party to
bring a claim directly against an insurer rather than a tortfeasor "only under limited
circumstances—[specifically,] the injured party must first obtain a judgment against the
tortfeasor, serve the insurance company with a copy of the judgment and await payment for 30
days"); *Rogan v. Liberty Mutual Ins. Co.*, 25 N.E.2d 188, 188 (Mass. 1940) (holding that
Massachusetts "statutes affording a remedy for an injured plaintiff against an insurer issuing a
liability policy require as a prerequisite to suit 'the recovery of a final judgment' against the
insured wrongdoer"). Kramer does not allege that she has, or that she has even sought, a
judgment against On Point. Without a judgment against On Point, Kramer has no direct right of
action against Defendant, and therefore lacks standing to bring an Action against Defendant. *See
Hartford Fire Inc. Co. v. Mitlof*, 123 F. Supp. 2d 762, 765 (S.D.N.Y. 2000) (holding that
plaintiffs injured by an insured party could not sue the insured's insurer without first obtaining a
judgment in the underlying action against the insured defendant).

Accordingly, Kramer does not have standing to bring this Action and Defendant's Motion is granted with respect to all claims brought by Kramer.[11]

### III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted. Because this is the first adjudication of Plaintiffs' claims, the dismissal is without prejudice. If Plaintiffs wish to file an amended complaint, Plaintiffs must do so within 30 days of the date of this Opinion. Plaintiffs should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiffs wish the Court to consider. Plaintiffs are advised that the amended complaint will replace, not supplement, all prior complaints and filings. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiffs fail to abide by the 30-day deadline, their claims may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 14), and to mail a copy of this Opinion to Plaintiffs.

SO ORDERED.

DATED:     August 22 , 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[11] Because the Court dismisses the Complaint for lack of subject matter jurisdiction, it need not consider Defendant's arguments that Plaintiffs fail to state a claim for improper denial of insurance coverage. (*See* Def.'s Mem. 14–16.) If Plaintiffs choose to amend their Complaint, and if On Point obtains counsel, Plaintiffs will have an opportunity to further develop their claims.